**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| *In re:* | ) | Chapter 7 |
| | ) | |
| EARL STRONG, | ) | Case No. 17-10106 (BLS) |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| ANDREW R. VARA | ) | |
| Acting United States Trustee, Region 3 | ) | Adv. No. 17-_____ (BLS) |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EARL STRONG | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT – DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727

Andrew R. Vara, Acting United States Trustee for Region 3 ("U.S. Trustee"), alleges as

follows:

1.      Plaintiff U.S. Trustee is generally charged with oversight of the administration of

bankruptcy cases filed in the District of Delaware under 28 U.S.C. § 586.

2.      Pursuant to 11 U.S.C. § 307, the U.S. Trustee has standing to be heard with regard

to this Adversary Proceeding.

3.      Plaintiff U.S. Trustee maintains offices located at the J. Caleb Boggs Federal

Courthouse, Suite 2207, 844 King Street, Wilmington, Delaware 19801.

4.      Earl Strong (the "Debtor") listed his address on the bankruptcy petition as P.M.B.

120, 933 No Dupont Hwy., Milford, Delaware 19963.

**BACKGROUND**

5.        The Debtor bought property at 11 Gooseneck Lane, Smyrna, Delaware, in 2004.

The property was titled only in his name.  In order to purchase the Gooseneck Lane property, the

Debtor borrowed $205,277 from MIT Lending and executed a mortgage in favor of MIT

Lending.  After several intermediate transfers, the MIT Lending note and mortgage was

transferred to Wells Fargo Bank, N.A.

6.        The Debtor stopped making payments on the Gooseneck Lane property in

November 2005.

*The Debtor's 2009 Bankruptcy Case*

7.        The Debtor filed a chapter 13 bankruptcy case on July 1, 2009.  The Debtor's

2009 case was consolidated with the chapter 13 case his wife filed on May 4, 2009 and jointly

administered under case number 09-11533.  The chapter 13 trustee moved to dismiss the

Debtor's 2009 case because the Debtor falsely claimed that the Gooseneck Lane property was his

primary residence and failed to disclose that a third party was leasing it from him and living

there.

8.        After being dismissed, reinstated, and converted, the chapter 7 trustee in the 2009

case held a section 341 meeting on February 8, 2010.  At that meeting, the Debtor admitted

under oath that although he had listed the Gooseneck Lane address as his primary residence, he

did not actually live there.  He also admitted that he received rental income from the Gooseneck

Lane property, which was not disclosed on his schedules.

9.        The Debtor filed a reaffirmation agreement for the debt on the Gooseneck Lane

property in his 2009 bankruptcy case (Docket No. 85), which he appears to have completed

himself and which does not appear to have been sent to him by Wells Fargo.  The reaffirmation

agreement was never approved by the Bankruptcy Court.

10.     On March 1, 2010, the U.S. Trustee filed a complaint to deny the Debtor's

discharge in the 2009 case.  The Debtor then voluntarily agreed to dismiss his case without a

discharge, and the 2009 case was dismissed on September 20, 2010.

*The Debtor's Current Bankruptcy Case*

11.     On January 13, 2017, the Debtor filed the voluntary chapter 7 petition that

commenced this bankruptcy case (Docket No. 1).

12.     On January 19, 2017, the Debtor filed Schedules C & E-F along with his

statement of his monthly income (Docket No. 10).

13.     On January 26, 2017, the Debtor filed an amended Petition, and an amended

Schedule C exempting his interest in the Gooseneck Lane property (Docket No. 15).

14.     Also On January 26, 2017, the Debtor filed his Schedules A-B, D, E-F, G, H, I, J,

Summary of Assets and Liabilities, Declaration Concerning Debtor's Schedules, Statement of

Financial Affairs, and Statement of Intention (Docket No. 16).

15.     The Debtor listed two accounts with Apple Bank on Schedule A-B, with balances

of $130 and $100, but then listed the same accounts again at number 17, this time with balances

of $80 and $300.

16.     The filing contained repeated pages of Schedule B, with differing values assigned

to the same asset each time the Debtor responded to the questions.

*The Section 341 Meeting and the Debtor's Documents*

        17.     On March 22, 2017, the Debtor appeared and testified to the following at the

section 341 meeting of creditors under the penalty of perjury:[1]

        a.     He is married.

        b.     His primary residence is the Gooseneck Lane property (Debtor asserted this several times).

        c.     His petition did not disclose his 2009 bankruptcy filing.

        d.     He transferred his interest in 11 Gooseneck Lane to his wife in March 2016 for no consideration.

        e.     He transferred the Gooseneck Lane property to his wife, who is younger, so she could obtain a reverse mortgage. But she was unsuccessful.

        f.     He has a checking and savings account at Apple Bank.

        g.     He owns a 2016 Mazda that he did not include on his schedules, which Del-One Credit Union ("Del-One") has a lien on.

        h.     He has a bank account with Del-One, and also has a signature loan with Del-One. The monthly payment on the signature loan is $112.

        i.     He did not include the Del-One loans, bank accounts, or monthly obligations on his Schedules.

        j.     His wife uses the Mazda to go work.

        k.     His wife does not work, but is trying to become a nurse's aide.

        l.     He makes monthly payments of $460 on the Mazda, which are current.

        m.     His wife receives social security income that he did not include on Schedule I.

        n.     He and his wife rent a property in New York, which they live in while his wife undergoes cancer treatment.  He has a one year lease for this property that ends at the end of 2017.

        o.     The Debtor's Schedule J line 4 lists $1,150 in monthly rent, which is for the New York property.

---

[1] Michael West, Bankruptcy Auditor for the Office of the United States Trustee, swears to the truth of the facts in paragraphs 17-40. *See* Declaration of Michael West and attached documents, filed in support of this Complaint.

p.      He did not include the lease for the New York property on Schedule G.

q.      The Gooseneck Lane property is rented to "a friend" while he and his wife live in New York. His wife gets $900 month in rent from the Gooseneck Lane property tenant.

r.      The $900 a month in rent received by the Debtor's wife was disclosed in the Statement of Financial Affairs Question number 5 but was not included on Schedule I.

s.      His children live in New York.

t.      He does not make monthly payments on the Gooseneck Lane property.

u.      He has lived at the Gooseneck Lane property since 2004.

v.      He and his wife have not filed tax returns for several years as their income is exempt.

w.      His wife elected not to continue with cancer treatments.

x.      He agreed to file an amended petition and schedules to include the missing assets, liabilities, and income that he did not include in his original schedules.

The audio recording of the February 22 section 341 meeting is in the custody of the U.S. Trustee, and a copy of a transcription of that recording will be filed prior to trial in this matter.

18.      On March 13, 2017, the Debtor filed amended Schedules A-B, C, D, G, and I. (Docket No. 36)

19.      The Debtor's amended Schedule C listed the Gooseneck Lane property, valued it at $190,000, and claimed an exemption of $190,000 under "Del C Tit 4914". The Debtor failed to exempt his interest in the Mazda.

20.      The amended Schedule B discloses three bank accounts at Apple Bank with a total combined balance of $400 but does not list the Del-One account.

21.      On March 20, 2017, the Debtor filed a second amended schedule A-B. (Docket No. 43).

22.     The Debtor amended Schedule A this time to list his interest in the Gooseneck property as "Tenancy by the entireties" with a value of $185,000.

23.     The second amended Schedule B discloses 3 bank accounts at Apple Bank with a total combined balance of $450 but again does not disclose the Debtor's Del-One account.

24.     Also at the section 341 meeting, the Debtor gave some recent Apple Bank statements to Mr. Burtch that had been redacted.

25.     The Debtor stated that he had redacted the transactions to "[get] rid of the addresses where he withdrew money."

26.     Both Mr. Burtch and Mr. West asked the Debtor to provide un-redacted copies of his bank statements for the year before his bankruptcy filing.

27.     On February 22, 2017, Mr. Burtch sent a letter to the Debtor, asking him to make certain corrections to his petition and schedules and to "provide copies of one (1) year of bank statements (January 2016 thru January 2017)."

28.     On June 9, 2017, Mr. Burtch forwarded a copy of the bank statements he received from the Debtor to the Office of the United States Trustee.

29.     The Debtor provided partially-redacted bank statements from only two of the three bank accounts he has at Apple Bank - savings account 2842 (for the period February 1, 2015 through January 31, 2017, but not the January 31, 2016, statement) and savings account 0838 for the period February 1, 2015 through February 28, 2017 (several statements and/or pages omitted).

30.     The Debtor failed to provide the following: statement for July 31, 2015, page 1 of 2; statements for September, October & November 2015; statement for July 2016, page 1 of 2; and statement for August 2016, page 1 of 2.

31.     The Debtor did not provide statements for checking account x675.

32.     The only activity in account 2842 was the deposit of the Debtor's social security benefits, followed by one to three transfers to either savings account 0838 and/or checking account x675.

33.     The Debtors' VA disability benefit was deposited into account 0838 each month, and the Debtor then made numerous ATM withdrawals at locations in New York.

34.     The ATM withdrawals were from ATMs located in West Babylon, NY; Bethpage, NY; Lindenhurst, NY; Westbury, NY, Farmingdale, NY, Lake Grove, NY, Babylon, NY; and Commack, NY.

35.     The Debtor had only 6 ATM transactions in Delaware during the two year period from February 2015 through February 2017, which occurred in an 11 day period between October 4, 2016 and October 14, 2016.

36.     The bank statements do not disclose any deposits of the $900 monthly rent the Debtor received from renting the Gooseneck Lane property from February 2015 through March 2016, before the Debtor transferred the property to his wife.

37.     The bank statements do not reveal any rent payments made by the Debtor in the amount of $1,150.

38.     One of the Debtor's bank statements contained a zip code plus 4 of 11510-2710, which is associated with the address 688 Baldwin Ave, North Baldwin, New York, 11510-2701.

39.     Erick Strong and Crystal Davis as joint tenants own the Baldwin Avenue property.

40.     Erick Strong is the Debtor's son.

*The Debtor's Litigation Against Wells Fargo*[2]

41.     Starting before his 2009 bankruptcy, and continuing into the present, the Debtor filed multiple proceedings in Delaware state court against Wells Fargo to avoid Wells Fargo's lien on the Gooseneck Lane property. The Debtor also sought to avoid any debt he might owe to Wells Fargo in connection with its lien.

42.     The following facts have been determined in the Delaware State Litigation case number 15C-03-003 RBY:

    a.    The Debtor executed a promissory note payable to lender MIT Lending in 2004.

    b.    The Debtor defaulted on the note in 2005, because he stopped making payments.

    c.    The bank accelerated the note because of the default.

    d.    The reaffirmation agreement and statement of intention that the Debtor signed and filed in his 2009 bankruptcy case both confirmed and acknowledged the underlying debt.

    e.    On February 26, 2016, the Superior Court of the State of Delaware entered an order granting summary judgment to Wells Fargo and determined that the Debtor was liable under the note. The Court scheduled an Inquisition hearing to determine the amount of the final judgment.

    f.    On September 13, 2016, the Supreme Court of the State of Delaware entered an Order affirming the Superior Court's February 26, 2016 judgment and opinion.

    g.    On October 4, 2016, the Superior Court of the State of Delaware entered a judgement against the Debtor for $202,629.50 with interest due from October 1, 2005 through October 21, 2017 in the amount of $117,600.91. The Debtor thus owes Wells Fargo a total of $320,230.41.

    h.    On February 27, 2017, the Supreme Court of the State of Delaware entered an order affirming the Superior Court's judgment of $320,230.43 against the Debtor.

---

[2] *See* Declaration of Michael West and its attachments, in which he swears to the truth of the facts in paragraphs 41-47.

8

43.    A Quit Claim Deed transferring the title for the Gooseneck property from Earl
Strong to Lillie Strong was recorded on May 17, 2016 in the Kent County Recorder of Deeds
Office, file no. BK-RE VL-8092 PG-288.

44.    In connection with litigation between the Debtor and Wells Fargo, Wells Fargo
attempted to levy against the Debtor's personal property located at 11 Gooseneck Lane.
However, the August 27, 2015 Sheriff's return indicated that the Debtor was out of state and was
renting to Stephanie Allen.

45.    Raymond and Stephanie Allen have had utilities and/or phone numbers associated
with the Gooseneck property since at least 2013.

46.    In a June 7, 2017 conversation with Mr. West, Mr. Allen said that:

    a.    He has lived at 11 Gooseneck Lane for 4 or 5 years.

    b.    His lease expired sometime in 2016 and he is living in the property on a
month to month basis.

    c.    His monthly rent is $900 a month.

    d.    He sends his rent payments to a P.O. Box.

47.    The Debtor's mailing address is PMB 120, 933 N. Dupont Hwy, Milford, DE
19963.  This is not a traditional P.O. Box at a post office, but is a privately owned business
called "The Mail Center."

48.    On January 19, 2017, the Debtor filed a "Motion for Judgment Avoiding", which
requested the Bankruptcy Court to avoid Wells Fargo's liability judgment with respect to his
debt on the Gooseneck Lane property (Docket No. 12).  The Debtor claimed in his motion that
he held the property "in tenancy" and that the "Homesteader" exemption applied.  However, he
also stated that "The Debtor Doesn't have the Property in his name." The Debtor did not disclose
in his motion that he had appealed Wells Fargo's judgment.

9

49.     The Debtor has not explained how he can exempt property that he transferred to his wife and thus does not own, either in the entireties or by himself.

50.     On April 19, 2017 Mr. Burtch objected to the Debtor's claim of exemption in the Gooseneck Lane property, because the Debtor swore under oath in his statement of financial affairs that he had transferred this property to his wife.

51.     In late May, 2017, Mr. Burtch learned that the Supreme Court of the State of Delaware had entered an order denying Mr. Strong's appeal of Wells Fargo's liability judgment. The Supreme Court entered its order on February 27, 2017, affirming the Superior Court. The Supreme Court held that the Debtor could not re-litigate the liability issue, and that his 2009 reaffirmation agreement was enough to indicate his intent to confirm and acknowledge the underlying debt to Wells Fargo.

52.     As of the date of this Complaint, the Debtor has not amended his petition, schedules, or statement of financial affairs, nor has he provided all documents that have been requested of him.

### COUNT 1 – DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727(a)(2)

53.     Plaintiff realleges the allegations contained in Paragraphs 1 – 52 above, as though fully set forth herein.

54.     As detailed above, the Debtor transferred property to his wife for no consideration, and concealed multiple assets (including bank accounts, at least one vehicle, and rental income from the Goosneck Lane property).

55.     Thus, the Debtor, with the intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed,

mutilated, or concealed property of the Debtor, within one year before the date of the filing of

the petition; or property of the estate, after the date of the filing of the petition.

### COUNT 2 – DENIAL OF DISCHARGE UNDER 11 U.S.C. § 727(a)(4)

56.    Plaintiff realleges the allegations contained in Paragraphs 1 – 52 above, as though

fully set forth herein.

57.    As detailed above, the Debtor mad e a multitude of false statements in his

bankruptcy case by filing several sets of false statements and schedules and lying under oath

multiple times at the section 341 meeting.

58.    Thus, the Debtor, knowingly and fraudulently, in or in connection with the case,

made a false oath or account, presented or used a false claim.

### CONCLUSION

59.    Plaintiff reserves all discovery rights under the Federal Rules of Bankruptcy

Procedure.

60.    Plaintiff specifically reserves the right to amend this Complaint pursuant to

Federal Rule of Bankruptcy Procedure 7015.

WHEREFORE the U.S. Trustee requests that this Court issue an order denying the

Debtor a discharge.


Dated: June 16, 2016                    Respectfully submitted,
       Wilmington, Delaware

                                        ANDREW R. VARA
                                        ACTING UNITED STATES TRUSTEE

                                        By:    /s/ Hannah Mufson McCollum
                                               Hannah Mufson McCollum, Esq.
                                               Trial Attorney
                                               United States Department of Justice

12

Office of the United States Trustee
J. Caleb Boggs Federal Building
844 King Street, Suite 2207, Lockbox 35
Wilmington, Delaware 19801
Phone: (302) 573-6491
Fax: (302) 573-6497
Hannah.McCollum@usdoj.gov